UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ANTHONY BINION,

                Plaintiff,        Civil Action No. 16-11037
                                    Honorable Avern Cohn
                                    Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 15]**

Plaintiff Michael Binion ("Binion") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Binion is not disabled under the Act is not supported by substantial evidence. Thus, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be DENIED, Binion's Motion for Summary Judgment [11] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.    REPORT**

    **A.    Procedural History**

On July 30, 2012, Binion filed an application for SSI, alleging a disability onset date of July 1, 2011. (Tr. 20). This application was denied initially on January 23, 2013. (Tr. 109-12). Binion filed a timely request for an administrative hearing, and appeared without counsel on May 15, 2014, at which time he requested, and was granted, an adjournment in order to obtain legal representation. (Tr. 74-88). Subsequently, Binion appeared for a second administrative hearing before ALJ Mary Ann Poulouse, this time represented by attorney Andrea Hamm. (Tr. 34-73). Both Binion and vocational expert Edward Pagella testified at that hearing. (*Id.*). On January 9, 2015, the ALJ issued a written decision finding that Binion is not disabled under the Act. (Tr. 20-29). On January 19, 2016, the Appeals Council denied review. (Tr. 1-5). Binion timely filed for judicial review of the final decision on March 21, 2016. (Doc. #1).

    **B.    Framework for Disability Determinations**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

2

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

  *1.   Binion's Reports and Testimony*

At the time of the administrative hearing, Binion was 47 years old, and at 5'11" tall, weighed 185 pounds. (Tr. 233, 237). He lived in a house with a roommate. (Tr. 38, 237). He completed the tenth grade and later earned a GED. (Tr. 38). Binion testified that his back has bothered him "ever since [he] got shot when [he] was a kid," but he worked for years, doing insulation work and other manual labor. (Tr. 39-41). He stopped working in 2000 because he was suffering from "too much pain" in his back, arms, knees, and feet. (Tr. 39).

As set forth above, Binion alleges disability as a result of various impairments, including arthritis, back pain and migraines "due to buck shots," bilateral foot problems, and left hip pain. (Tr. 237). He has been prescribed a cane and uses it to keep the pressure off of his left foot and hip, even within his own home. (Tr. 43-44). He indicated that standing in one spot is harder

than walking. (Tr. 44). At the time of the hearing, Binion had just had a CT scan, which apparently showed plantar fascial fibromatosis in his feet, which would require surgery. (Tr. 42-43, 48-50). Binion further testified that he has difficulty raising both of his arms above shoulder height and can lift only a half-gallon of milk. (Tr. 56-57).

Binion does not drive because his license lapsed in 1998. (Tr. 40). He needs help putting on his socks and shoes; his brother does his hair, cuts the grass, and takes him to the grocery store; and his sister prepares his meals. (Tr. 40). When asked about his daily activities, Binion indicated that he just stays in the house, watching television, listening to music, or trying to sleep. (Tr. 57-58). When he goes to the store (twice a month), he rides in a cart; he says he would not even attempt to walk around the store because his hip, feet, and back hurt too badly. (Tr. 40-41, 61). At the time of the hearing, he had not used marijuana for pain for approximately 2 ½ weeks, saying that he had recently been prescribed other medication to help him sleep. (Tr. 55). He needs reminders to take his medication, and the side effects include dizziness, headaches, and diarrhea. (Tr. 55-56).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Binion's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Edward Pagella testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 67-71). The ALJ asked the VE to imagine a claimant of Binion's age, education, and work experience who can perform sedentary work, with the following additional limitations: no ladders, ropes, scaffolds, or unprotected heights; must be able to use a cane for standing and

walking; and limited to unskilled work involving only occasional interaction with the public and coworkers. (Tr. 68-69). The VE testified that the hypothetical individual would be capable of working in the jobs of sorter (98,000 jobs nationally), assembler (125,000 jobs), and packer (215,000 jobs). (*Id.*).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Binion has not engaged in substantial gainful activity since July 30, 2012 (the application date). (Tr. 22). At Step Two, the ALJ found that Binion has the severe impairments of calluses, status post gunshot wound, depression, and marijuana abuse. (*Id.*). At Step Three, she found that Binion's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then found that Binion retains the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations: no ladders, ropes, scaffolds, or unprotected heights; must be able to use a cane for standing and walking; and limited to unskilled work involving only occasional interaction with the public and coworkers. (Tr. 24).

At Step Four, the ALJ determined that Binion has no past relevant work. (Tr. 27). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Binion is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ found that Binion is not disabled under the Act. (Tr. 28).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by

6

a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.  Analysis**

In his motion for summary judgment, Binion argues that the ALJ erred in "gloss[ing] over" the "extensive medical documentation from [his] treating physicians" and in failing to "properly address the supportive medical evidence in the record." (Doc. #11 at 14, 15). For the reasons set forth below, the Court agrees and finds error in (1) the ALJ's Step Two determination that Binion's degenerative disc disease is not a severe impairment; and (2) the ALJ's Step Three determination that Binion's impairments do not meet or medically equal a listed impairment.

As an initial matter, the ALJ found that Binion suffers from the severe impairments of "calluses, status post gunshot wound, depression, and marijuana abuse." (Tr. 22). The ALJ specifically found other of Binion's impairments nonsevere – including "rectal bleeding and hypertension" – but made no mention whatsoever of Binion's degenerative disc disease[1] in evaluating the severity of his impairments at Step Two. (Tr. 22-23). The Sixth Circuit has "characterized step two of the disability determination process as a *de minimis* hurdle." *Despins*

---

[1] There can be little dispute that Binion suffers from degenerative disc disease. Indeed, the ALJ noted that, "X-rays in late 2014 revealed some *degenerative changes in the back* and hips …." (Tr. 26 (citing Tr. 400 (which showed severe facet hypertrophic changes at the lumbosacral junction, mild degenerative disc space narrowing at several levels, and minimal anterolisthesis of L4 and L5) (emphasis added)).

7

*v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (internal quotations omitted). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Having reviewed the relevant medical evidence, as discussed in greater detail *infra* at 11-13, the ALJ erred in failing to conclude that Binion's degenerative disc disease is a severe impairment, particularly given the *de minimis* Step Two hurdle which "is designed simply to screen out and dispose of baseless claims." *Pruitt v. Comm'r of Soc. Sec.*, 2015 WL 5730023, at *4 (E.D. Mich. Aug. 24, 2015).

The law is clear, however, that a Step Two error does not constitute reversible error so long as the ALJ considers all of the claimant's impairments, both severe and non-severe, during later steps of the sequential evaluation analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In other words, as long as the ALJ adequately considered Binion's degenerative disc disease at the remaining steps of the analysis, her failure to find this impairment severe at Step Two does not, in and of itself, warrant remand. *See Pruitt*, 2015 WL 5730023, at *4 (citing *Maziarz*, 837 F.2d at 244).

Here, the ALJ also erred in the later steps because she did not mention, let alone analyze, Binion's degenerative disc disease at Step Three. Binion bears the burden of proving at Step Three that his impairment meets or medically equals a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment

will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers*, 582 F.3d at 653, and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. § 416.925(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D) ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation"); *see Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 Fed.Appx. 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.").

In order for Binion to meet the criteria of Listing 1.04(A) ("disorders of the spine"), he must show that he has a disorder of the spine (for example, degenerative disc disease) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A).

In evaluating whether Binion satisfied his burden, the ALJ's decision had to provide "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record"—including whether Binion's degenerative disc disease met or medically equaled Listing 1.04(A). 5 U.S.C. § 557(c)(3)(A). The ALJ failed to comply with this requirement because she did not mention of Listing 1.04(A) in her decision, did not set forth the criteria to meet or medically equal this listing, and failed to analyze the medical

9

evidence as it relates to this listing. Indeed, with respect to Binion's physical impairments, the ALJ said only:

> The evidence does not support a finding that the claimant has the severity of the symptoms required either singly or in combination to meet or equal any medical listing for a physical impairment, including listing 1.02.[2] No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment.

(Tr. 23 (footnote added)). In short, by failing to analyze whether Binion satisfied Listing 1.04(A)'s requirements, the ALJ erred.

Once again, though, the mere existence of such an error does not necessarily require remand. This Court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 (E.D. Mich. 2012). Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)) (internal quotations omitted) (emphasis in original). Conversely, remand is appropriate in cases where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)) ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011).

---

[2] Listing 1.02 pertains to major dysfunction of a joint (here, presumably Binion's left hip).

In this case, thorough evaluation of the objective medical evidence – critical portions of which the ALJ failed to mention – at least leaves open the possibility that the ALJ could determine that Binion meets the requirements of Listing 1.04(A). *See Reynolds*, 424 F. App'x at 416; *May*, 2011 WL 3490186, at *9. To begin with, the record contains at least some evidence of "nerve root compression." Specifically, Binion underwent a CT scan of his lumbar spine in October 2014, which showed a bulging disc at L3-L4 that "mildly flattens the ventral thecal sac"; a disc bulge and prominent facet arthropathy at L4-L5 contributing to "severe bilateral foraminal narrowing with *mass effect on the exiting L4 nerves*"; and, at L5-S1, "mild mass effect on the anterior thecal sac and *contact made with the S1 nerve roots*." (Tr. 435-36 (emphasis added)). The ALJ failed to mention any of this objective medical evidence in her decision.

In addition to evidence of nerve root compression, Listing 1.04(A) also requires evidence of neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, a positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). The record contains evidence of most – if not all – of these indicators, yet the ALJ's decision fails to mention any of it. For example, Binion complained on multiple occasions of pain radiating to his left lower extremity – complaints that at least arguably evidence neuro-anatomic distribution of pain. (Tr. 300, 391, 426). The ALJ did not mention these complaints, instead citing a September 2014 EMG of Binion's left lower extremity, which revealed no electrodiagnostic evidence of radiculopathy. (Tr. 26 (citing Tr. 424)). The ALJ also ignored the fact that even after reviewing the results of this EMG, Binion's treating physician, Sadiq Haque, D.O., continued to opine that he suffered from "[l]ikely left lumbar radiculopathy." (Tr. 427).

Finally, although the ALJ cited Binion's negative straight leg raising test at his July 2013 consultative examination (Tr. 26 (citing Tr. 300-07)), the record also contains evidence of positive straight leg raising tests in July and October 2014 (Tr. 392, 427), both of which the ALJ failed to mention. And, similarly, while the ALJ points out that Binion had "normal range of motion" at the consultative examination (Tr. 26 (citing Tr. 300-07)), she ignores evidence that he had limited range of motion in his lumbar spine at subsequent visits to Dr. Haque (Tr. 392, 427). Finally, the ALJ cites to a finding of "normal strength" at the consultative examination (Tr. 26), but ignores evidence of motor loss and muscle weakness at subsequent doctor's visits in 2014 (Tr. 392 ("considerable weakness in the left lower extremity as compared to the right" and "difficulty walking"; 427 "weakness in the left lower extremity in quads, hamstrings, hip flexors as compared to the right")).

In summary, it appears that at least several of the criteria of Listing 1.04(A) are satisfied, and there is potentially enough evidence from which the ALJ could find that all of the Listing's criteria are satisfied. It is clear that Binion has degenerative disc disease of the lumbar spine (despite the fact that the ALJ failed to find this condition a severe impairment at Step Two). (Tr. 392, 400, 427). It also appears that there is objective CT evidence of nerve root compression. (Tr. 435-36). And, there is evidence in the record of a limited range of lumbar motion, as well as motor loss and muscle weakness, and positive straight leg raising tests, all facts that the ALJ failed to mention. (Tr. 392, 427). Viewing the record as a whole, then, it appears that had the ALJ properly considered Binion's back impairment in light of Listing 1.04(A), she could very well have determined that Binion met or medically equaled[3] that Listing's criteria.

---

[3] Even if Binion cannot demonstrate that he meets the criteria of Listing 1.04(A), he can still satisfy his burden at Step Three by proving that he has an impairment (or combination of impairments) that medically equals this Listing. To do so, he must "present medical evidence

12

For these reasons, the Court cannot conclude that the ALJ's error in failing to specifically consider Binion's degenerative disc disease in light of Listing 1.04(A) was harmless. Regardless of how the ALJ might ultimately decide Binion's claim, at this juncture, the Court cannot say that, if the ALJ had conducted a proper analysis at Step Three, she necessarily *would have* found that Binion does not meet or medically equal the relevant Listing. And, if she does find that Binion meets or medically equals Listing 1.04(A), he would be presumptively disabled and entitled to benefits. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). Thus, because the Court cannot say that the ALJ's error was harmless, remand is appropriate. *See Reynolds*, 424 F. App'x at 416.[4]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be DENIED, Binion's Motion for Summary Judgment [11] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be

---

that describes how [his] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that Binion must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted).

[4] Binion also argues that remand is appropriate because the ALJ erred in failing to obtain an expert medical opinion regarding medical equivalency. (Doc. #11 at 17). Because the Court is remanding on other grounds, it need not address this issue in detail. However, the Court notes that the Honorable Patrick J. Duggan recently surveyed case law on this issue and concluded that "the lack of an expert medical opinion on the issue of equivalency" requires remand, because "it is not the prerogative of this Court, the ALJ, or [the Commissioner] to draw conclusions about the raw medical data and how [the plaintiff's] severe impairments may interact with the others." *Sheeks v. Comm'r of Soc. Sec.*, 2015 WL 753205, at *7 (E.D. Mich. Feb. 23, 2015). Thus, on remand, to the extent necessary, the ALJ should ensure that the record contains an expert medical opinion on the issue of equivalency.

REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: December 29, 2016  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 29, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
